Vincent F. Gerbino (VG 0555)
BRUNO, GERBINO & SORIANO, LLP.
445 Broad Hollow Road, Suite 220
Melville, New York 11747
Telephone: (631) 390-0010
Facsimile: (631) 393-5497

*Counsel for Plaintiff, Sonny Bermudez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SONNY BERMUDEZ,

                              Plaintiff,                Docket No.:_____( )

        -against-                            **Plaintiffs Demand a Trial By Jury**

BON SECOURS CHARITY HEALTH SYSTEM, INC. and
THERESA KRELL,

                              Defendants.
------------------------------------------------------------------------X

Plaintiff, SONNY BERMUDEZ, by his attorneys, BRUNO, GERBINO & SORIANO, LLP, herby complains of the Defendants as follows:

## **NATURE OF THE CASE**

1. Plaintiff complains of the Defendants pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), and the New York State Human Rights Law, NY Exec. L. §§296 (2015), and seeks damages to redress the injuries he has suffered as a result of being sexually harassed and discriminated against on the basis of gender by his employer.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

3. The Court has supplemental jurisdiction over the Plaintiff's claims asserted under state law, pursuant to 28 U.S.C. §1367.

4. Venue in this District is appropriate pursuant to 28 U.S.C. §1391, as the Southern District of New York is the District in which one or more of the Defendants resides and because this is the District where a substantial amount of the events forming the basis of this Complaint occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed charges of discrimination, upon which charges this Complaint is based, with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated May 31, 2019, with respect to the charges of discrimination that are asserted in this Complaint.

7. This Action is being commenced within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## **PARTIES**

8. Plaintiff SONNY BERMUDEZ ("BERMUDEZ") is a resident of the State of New York, and resides in the County of Orange.

9. Defendant BON SECOURS CHARITY HEALTH SYSTEM INC. ("BSCHS") is a New York Corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principle place of business located at 225 Lafayette Avenue, Suffern, New York 10901.

10. Defendant BSCHS owns and operates St. Anthony Community Hospital, located in Warwick, New York.

11. At all times relevant hereto, Plaintiff was an employee of Defendant BSCHS, and worked at St. Anthony Community Hospital, located at 15 Maple Avenue, Warwick, New York 10990.

12. Upon information and belief, Defendant THERESA KRELL ("KRELL") was and is a resident of the State of New York, County of Orange.

13. At all material times, Defendant KRELL was an employee and manager of Defendant BSCHS.

14. At all times relevant hereto, Defendant KRELL was Plaintiff Bermudez's supervisor and exercised supervisory authority over him. Defendant KRELL had the authority, granted by

Defendant BSCHS, to terminate and/or affect the terms and conditions of Plaintiff's employment.

15. Defendants BSCHS and KRELL are referred to herein collectively as the "Defendants."

## MATERIAL FACTS

16. Defendant BSCHS hired Bermudez as a Materials Coordinator, and he began his employment on April 9, 2012, earning a yearly salary of approximately $67,500.00.

17. However, after Defendant KRELL became Plaintiff's supervisor on or around May, 2014, she began acting progressively more friendly to the Plaintiff, eventually subjecting the Plaintiff to severe sexual harassment solely due to his gender.

18. In or about June, 2017, on a Friday afternoon, Plaintiff was bending over in the Operating Room Supply Room putting supplies away. **Defendant KRELL approached Plaintiff from behind and smacked him on the buttocks. After striking the Plaintiff, Defendant KRELL stated, "If your wife were to find out, she would kick my ass."**

19. Plaintiff ignored Defendant KRELL's advance out of fear of losing his job and continued to put the supplies away.

20. Thereafter, in or about June, 2017, on a Monday afternoon, Plaintiff was working at a suture cart preparing to place an order for supplies. **Defendant KRELL approached him from**

**behind, reached over his right shoulder with her right arm to grab sutures from the cart, placed her left hand around the Plaintiff's waist, pressed her breasts against the Plaintiff's back, and rubbed her breasts against the Plaintiff's back in a side to side motion.**

21. When Plaintiff ignored Defendant KRELL's advance, Defendant KRELL stated, **"If anyone saw this I would get fired, and if your wife found out, she would kick my ass."**

22. Plaintiff again ignored Defendant KRELL's latest sexual advance out of fear of losing his job and continued his work.

23. Thereafter, on multiple occasions, when Defendant KRELL saw Plaintiff speaking with a female at work, Defendant KRELL would state to Plaintiff, **"Oooohhh, I am going to tell Yvonne!" (Plaintiff's wife).**

24. Again, Plaintiff ignored Defendant KRELL's comments out of fear of losing his job.

25. Plaintiff did not initially report these instances of sexual harassment to his supervisor, because Defendant KRELL was his supervisor.

26. Plaintiff did not report these instances of sexual harassment to Defendant BSCHS for fear of being terminated because Defendant KRELL was his supervisor.

27. During the following sixteen months after ignoring Defendant KRELL's advances and sexual harassment, Defendant BSCHS and Defendant KRELL intentionally retaliated against Plaintiff by creating a hostile work environment.

28. By way of example, on February 6, 2018, Defendant KRELL responded to Plaintiff's "Good Morning" greeting in the operating room by yelling at and using profanity towards Plaintiff.

29. On or about March 3, 2018, Plaintiff was asked to provide a report on all implant expenses, totaling in excess of 10,000 products (a report that was usually performed by department leaders), and was told to have the report finished within 72 hours. However, Plaintiff did not have access to the "Lawson System" to complete such a report, and when he requested assistance and training from BSCHS Vice President of Patient Care, Anita Volpe, to complete a task he had never been asked to perform, he was told, "No Training needed."

30. Defendant BSCHS and Defendant KRELL continuously requested reports and information from the Plaintiff that was only available to managers through the Lawson System. Said requests were always given with short deadlines, and continued requests for access to the Lawson System and for training or assistance were denied and met with disgust by the Defendants. Plaintiff was continuously told to "figure it out," even though it was impossible for him to complete the assignment without access to the system.

31. On or about April 18, 2018, Defendant KRELL, in a hostile manner, aggressively and falsely accused Plaintiff of slicing open a sterile box with a box cutter.

32. On or about April 27, 2018, Plaintiff was excluded from an Operating Room meeting, which he had always participated in during the prior six years of his employment.

33. In or about May 2018, Defendant KRELL intentionally removed the shade from Plaintiff's office window, causing intense heat in Plaintiff's office.

34. In or about May, 2018, Defendant KRELL intentionally used Plaintiff's office to store equipment and chemicals, causing an excessively cramped space and a noxious odor.

35. In or about May 2018, Defendant KRELL informed Plaintiff that he was to keep his office door closed at all times, including while his office was occupied. However, every other employee was given permission to keep their office door open while occupied.

36. On or about May 17, 2018, Plaintiff requested a meeting with Yvonne Capone of the Human Resources department regarding the hostile work environment created by Defendant KRELL. However, instead of granting Plaintiff's request for a meeting, Ms. Volpe and Defendant KRELL issued Plaintiff a "Step 2 – Final Written Warning" on May 18, 2019. Plaintiff had never been issued a Step 1 Warning in his six years working at BSCHS.

37. On or about May 21, 2018, Plaintiff requested a meeting with HR Supervisor Vincent Sampugnaro, which request was never granted.

38. On or about May 31, 2018, Plaintiff met with BSCHS Chief Operating Office Patrick Schminke regarding Defendant KRELL's retaliation. Mr. Schminke told Plaintiff, "We need

to fix this and treat people with respect and dignity." However, no further actions or efforts were undertaken by the Defendants to address and resolve the hostile work environment to which Plaintiff was being subjected.

39. On or about July 29, 2018, Plaintiff was singled out by Defendant KRELL and Yvonne Capone for outstanding recalls. However, the recalls in question occurred while Plaintiff was out on vacation, and there were three other employees with a significantly higher amount of open recalls. Ms. Capone intentionally attempted to conceal this contextual information from Plaintiff.

40. On or about July 20, 2018, Plaintiff requested a meeting with Anita Volpe in the HR department to discuss the ongoing harassment and retaliation to which he was being subjected. Ms. Volpe subsequently cancelled the meeting, which never occurred.

41. On or about August 15, 2018, Plaintiff was falsely accused of e-mailing confidential pricing information to his private e-mail account, and he was suspended without pay.

42. On or about September 27, 2018, Plaintiff was terminated by his supervisor, Defendant KRELL, for allegedly forwarding confidential pricing information to his personal e-mail.

43. Defendant KRELL's response to Plaintiff's rebuffing of her sexual advances were retaliatory. Defendant KRELL was setting Plaintiff up up to be disciplined and/or terminated.

44. Defendant BSCHS' responses to Plaintiff's multiple requests for meetings with the Human Resources department regarding Defendant KRELL's sexual harassment and retaliation were dismissive and insincere.

45. Defendants subjected Plaintiff to a discriminatory, hostile and abusive work environment that no reasonable person should or could be expected to endure.

46. Defendants created a hostile work environment, which reasonably interfered with Plaintiff's work environment and his employment.

47. Plaintiff was treated differently by his supervisor, Defendant KRELL, solely due to his gender (sexual harassment) and his rejection of her sexual advances.

48. Plaintiff has been unlawfully discriminated against, humiliated, degraded, and belittled, and, as a result, has suffered loss of his civil rights, emotional distress and loss of income and other benefits.

49. The Defendants' actions and conduct were knowing and intentional, and were intended to harm Plaintiff.

50. As a result of the acts and conduct complained herein, Plaintiff has suffered a loss of income, loss of salary, bonus, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary loss, emotional pain, suffering,

inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

51. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

52. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

54. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of Defendant BSCHS. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or part, upon an employee's gender (sexual harassment).

55. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et. Seq., by Defendant KRELL'S sexual harassment of Plaintiff, y discriminating against

Plaintiff because of his gender (sexual harassment) and by retaliating against Plaintiff for complaining of the violations of his rights.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION <u>UNDER THE NEW YORK STATE HUMAN RIGHTS LAW</u>

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

57. The New York State Human Rights Law, NY Exec. L. §§296 (2015), provides that, "It shall be an unlawful discriminatory practice For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

58. Defendants engaged in unlawful discriminatory practices in violation of the New York State Human Rights Law, NY Exec. L. §§296 (2015) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his gender (sexual harassment).

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
(As Against Defendant KRELL only)**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. The New York State Human Rights Law, NY Exec. L. §§296 (6) (2015), provides that, "It shall be unlawful discriminatory practice of any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do so.

61. Defendant KRELL engaged in unlawful discriminatory practices in violation of the New York State Human Rights Law, NY Exec. L. §§296 (6) (2015) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

**AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63. The New York State Human Rights Law, NY Exec. L. §§296 (7) (2015), provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

64. Defendants have violated the New York State Human Rights Law, NY Exec. L. §§296 (7) (2015) as stated herein.

## JURY DEMAND

65. Plaintiff demands a trial by jury.

  **WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), and the New York State Human Rights Law, NY Exec. L. §§296 (2015) in that Defendants sexually harassed Plaintiff and discriminated against Plaintiff on the basis of gender;

B. Awarding damages to Plaintiff for all lost wages and benefits, and damages for severe emotional distress, resulting from Defendants' unlawful sexual harassment, retaliation and discrimination and to otherwise make him whole for any losses suffered as a result of Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of this action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: Melville, New York
   August 20, 2019

          Yours, etc.,

          BRUNO, GERBINO & SORIANO, LLP

          By:_____/S/_____
            VINCENT F. GERBINO, ESQ.
          Attorneys for Plaintiff
          445 Broad Hollow Road - Suite 220
          Melville, New York 11747
          Tel.  631.390.0010
          Fax.  631.393.5497
          BG&S File #NJ-21-3015

TO: